UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AMBER NICOLE PERKINS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.: 4:24-CV-01080 |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **INSTANT BRANDS LLC,** | § | |
| **INSTANT BRANDS, INC. and** | § | |
| **CORELLE BRANDS, LLC,** | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff, **AMBER NICOLE PERKINS**, (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **CLARK │VON PLONSKI │ANDERSON** hereby submits the following Complaint and Demand for Jury Trial against **INSTANT BRANDS, LLC. INSTANT BRANDS, INC. and CORELLE BRANDS, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.      Instant Brands Defendants design, manufacture, market, import, distribute and sell a wide-range of consumer kitchen products, including the subject "Instant Pot Duo Frontier Rose 6-Quart," which specifically includes the Frontier models (referred to hereafter as "pressure cooker(s)" or "Subject Pressure Cooker") that is at issue in this case.

2.      Defendants tout the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendants' claims of "safety," it designed, manufactured, marketed,

---

[1]   *See*, e.g. Instant Pot Duo Plus User Manual, pg. 22.  A copy of the User Manual is attached hereto as "Exhibit A."

1

imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. The Plaintiff in this case sustained serious and substantial bodily injuries and damages when the lid of the pressure cooker was able to be rotated, opened, or removed while the pressure cooker retained pressure.

4.      Defendants knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      Defendants ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and consumers like her.

6.      As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF AMBER NICOLE PERKINS

7.      Plaintiff Amber Nicole Perkins is a resident and citizen of the city of Liberty, County of Liberty, State of Texas.

8.      On or about September 22, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed us of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.  The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as a result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

9.      Defendants design, manufacture, market, import, distribute and sell a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

10.      Defendants boast that "cooking with Instant Brands is everyday magic,"[3] and that their products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

11.      Instant Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

12.      Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

13.      Corelle Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

14.      On June 12, 2023, Instant Brands Defendants commenced a Chapter 11 proceeding.  *See*

---

[2] *Id*. at 4 and 5.
[3] *See* https://www.instanthome.com/about-us
[4] *Id.*

*In re Instant Brands Acquisition Holdings Inc., et al.* (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; *provided*, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15.     This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on October 5, 2023 and October 12, 2023 [Claim No. 0000010395 and Claim No.

4

0000010735], respectively. This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Texas and intentionally availed itself of the markets within Texas through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

19.    Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

20.    Defendants aggressively warrant, market, advertise, and sell its pressure cookers as "[e]asy to use, easy to clean, fast, versatile, and convenient"[5] and repeatedly boast about its pressure cookers' purported "proven safety features."[6]

21.    For instance, the Defendants claim that its pressure cookers include a "Pressure Locking Lid" which "locks into place once the cooker has pressurized."[7]

---

[5] *See* https://www.instanthome.com/product/instant-pot/duo/6-quart-pressure-cooker-v4
[6] *Id.*
[7] Instant Pot Duo Nova User's Manual, pg. 23.

22.    To further propagate its message, Defendants have used, and continue to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers.  For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your Knew Instant Pot IP-DUO":

a.   "The first thing you need to know about your IP-DUO is that **you don't need to be afraid of it**, as many people are afraid of stovetop pressure cookers."[8]

b.   "With 10 safety features built in, you can use your Instant Pot with confidence, **knowing that it is not going to explode**."[9]

c.   "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[10]

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cooker's "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, **there's no way to open the pressure cooker**."[12]

24.    According to the User's Manual accompanying each individual unit sold, the pressure cookers possess a "Pressure Locking Lid" and a "Float Valve" which "pops up and locks the lid of the cooker in place for safe pressure cooking,"[13] misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.

---

[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42-0:46

[9] *Id*. at 0:47 – 0:55.

[10] *Id*. at 0:56 – 1:08.  This apparently suggest that even if the lid is opened while the unit is still pressurized, it will not harm you.

[11] *See* https://www.hippressurecooking.com/

[12] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30)

[13] Instant Pot Duo Nova User's Manual, pg. 29.

25. By reason of the forgoing acts or omissions, the above-named Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26. Plaintiff used the pressure cooker for its intended purpose of preparing meals for herself and/or her family and did so in a manner that was reasonable and foreseeable by the Defendants.

27. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being rotated, opened, or removed with normal force while the unit remained pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

28. Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29. Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31. Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continue to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continue to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and others like her.

32.     As a direct and proximate result of Defendants' intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

33.     Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

34.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

35.     At the time of Plaintiff's injuries, Defendants' Pressure Cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

36.     Defendants' Pressure Cookers were in the same or substantially similar condition as when they left the possession of Defendants.

37.     Plaintiff did not misuse or materially alter their respective Pressure Cookers.

38.     The Pressure Cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

39.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Pressure Cookers safe. Specifically:

8

a. The Pressure Cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the Pressure Cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendants failed to warn and place adequate warnings and instructions on the Pressure Cookers;

e. Defendants failed to adequately test the Pressure Cookers; and

f. Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

40. Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT II**
**NEGLIGENCE**

41. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

42. Defendants have a duty of reasonable care to design, manufacture, market, and sell non-defective Pressure Cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

43. Defendants failed to exercise ordinary care in the manufacture, sale, warning, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its Pressure

9

Cookers in that Defendants knew or should have known that said Pressure Cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

44.     Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of its Pressure Cookers in that, among other things, it:

   a.   Failed to use due care in designing and manufacturing the Pressure Cookers to avoid the aforementioned risks to individuals;

   b.   Placed an unsafe product into the stream of commerce;

   c.   Aggressively over-promoted and marketed its Pressure Cookers through television, social media, and other advertising outlets; and

   d.   Were otherwise careless or negligent.

45.     Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market its pressure cookers to the general public (and continues to do so).

46.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY

47.      Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

48.     Defendants expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and her family. Moreover, Defendants expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically:

     a.  "Once enough steam has built up, the float valve pops up and locks the lid in place."[14]

     b.  "The lid is removable during non-pressure cooking so you can taste-test as you go. When pressure cooking, the lid only locks into place once the multicooker has pressurized."[15]

     c.  "**Safety Lid Lock** – When cooker is pressurized, the lid will automatically lock to prevent opening the cooker."[16]

     d.  "**Lid Position Detection** – If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin."[17]

49.     Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

50.     Defendants marketed, promoted, and sold its pressure cookers as a safe product, complete with "safety mechanisms."

51.     Defendants' pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

52.     Defendants breached its express warranties in one or more of the following ways:

---

[14] *Id.* at pg. 17.
[15] *Id.* at pg. 25.
[16] *See* https://www.instanthome.com/support/instant/resources
[17] *Id.*

a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendants, were defectively designed, and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b. Defendants failed to warn and/or place adequate warnings and instructions on their pressure cookers;

c. Defendants failed to adequately test its pressure cookers; and

d. Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

53.     Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

54.     Plaintiff's injuries were the direct and proximate result of Defendants' breach of its express warranties.

55.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

12

56.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

57.     Defendants manufactured, supplied, and sold its Pressure Cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

58.     Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

59.     Defendants' Pressure Cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

60.     The Plaintiff in this case reasonably relied on Defendants' representations that its Pressure Cookers were a quick, effective and safe means of cooking.

61.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

62.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

13

64.     At the time Defendants marketed, distributed and sold its Pressure Cookers to the Plaintiff in this case, Defendants warranted that its Pressure Cookers were merchantable and fit for the ordinary purposes for which they were intended.

65.     Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

66.     Defendants' Pressure Cookers were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

67.     Plaintiff purchased her Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that they were safe for its intended, foreseeable use of cooking.

68.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

69.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## PUNITIVE DAMAGES

14

70.     Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

71.     The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendants would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite their knowledge that the lid could be prematurely removed while the unit remained pressurized, Defendants made a conscious decision not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of its pressure cookers. Defendants' outrageous conduct rises to the level that Plaintiffs should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profits above the safety of consumers in the United States of America.

72.     Prior to and during the manufacturing, sale, and distribution of its pressure cookers, Defendants knew that said pressure cookers were in a defective condition as previously described herein, and knew that those who purchased and used their pressure cookers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

73.     Further, Defendants knew that its pressure cookers presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendants unreasonably subjected consumers of said pressure cookers to risk of serious and permanent injury from their use.

74.     Despite this knowledge, Defendants, for the purpose of enhancing its profits, knowingly and deliberately failed to remedy the known defects in its pressure cookers, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendants intentionally proceeded with the manufacturing, sale, distribution and marketing

15

of its pressure cookers knowing these actions would expose consumers, such as Plaintiff, to serious danger in order to advance its pecuniary interest and monetary profits.

75.     Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendants with willful and conscious disregard for the safety of the Plaintiff, her family, and consumers like her, entitling the Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, including exemplary damages if applicable, to which he is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

   a.  judgment for Plaintiff and against Defendants;

   b.  damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendants' pressure cooker;

   c.   pre and post judgment interest at the lawful rate;

   d.  exemplary, punitive, and treble damages on all applicable Counts as permitted by the law;

16

e. a trial by jury on all issues of the case;

f. an award of attorneys' fees; and

g. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully Submitted,

**CLARK │VON PLONSKI │ANDERSON**

Dated: March 25, 2024

*/s/ Collen Clark*
COLLEN A. CLARK
State Bar No. 04309100
R. CONNOR BARBE
State Bar No. 241085
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500/214-780-0501 Fax
eservice@cvpalaw.com

*In association with:*

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
Kenneth W. Pearson, Esq. (MN #016088X)
Adam J. Kress, Esq. (MN #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***